UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HALE CAMERMAN,
individually and on behalf of all
others similarly situated,    CLASS ACTION

    Plaintiff,    JURY TRIAL DEMANDED

v.

LYNDON SOUTHERN INSURANCE COMPANY
a Florida corporation,
CARGUARDIAN WARRANTY LLC
d/b/a CARGUARDIAN,
a California corporation, and
OMEGA AUTO CARE,
a Missouri corporation,

    Defendants.
_____/

**CLASS ACTION COMPLAINT**

Plaintiff Hale Camerman brings this class action against Defendants Lyndon Southern Insurance Company ("Lyndon Insurance"), CarGuardian Warranty LLC d/b/a CarGuardian ("CarGuardian") and Omega Auto Care ("Omega Auto"), and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.    This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendants' knowing and willful violations of the TCPA.

2.    At it issue in this case are marketing calls sent for the purpose of selling Defendant Lyndon Insurance's vehicle service insurance policies.

3.    As the Federal Communications Commission has warned consumers, "you may receive

calls from scammers posing as representatives of a car dealer, manufacturer or insurer telling you that your auto warranty or insurance is about to expire. The call will include some sort of pitch for renewing your warranty or policy."[1]  These calls, like the ones at issue here, are often "automated or pre-recorded…."

4. The calls at issue were placed by Defendant CarGuardian – a self-proclaimed "industry-leading provider of Vehicle Service Contracts. With 18+ years of experience and over $1 Billion dollars in claims paid,"[2] and Defendant Omega Auto, who claims to have been "Servicing Vehicle Owners for Nearly Two Decades!"[3]

5. Defendants caused thousands of calls to be placed to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

6. Through this action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct. Plaintiff also seeks statutory damages on behalf of himself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendants.  Plaintiff seeks up to $1,500.00 in damages for each call that is in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00

---

[1] https://www.fcc.gov/consumers/guides/beware-auto-warranty-scams; (last accessed on May 13, 2019).

[2] https://www.carguardian.com/; (last accessed on May 13, 2019).

[3] https://omegaautocare.com/; (last accessed on May 13, 2019).

threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

8. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendants provide and market their services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.  Further, Defendants' tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendants have placed the same calls complained of by Plaintiff to other individuals within this judicial district, such that some of Defendants' acts have occurred within this district, subjecting Defendants to jurisdiction here.

## PARTIES

9. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

10. Defendant Lyndon Insurance is a Florida corporation with its principal office located at 10151 Deerwood Park Blvd Bldg 100, Suite 330, Jacksonville, FL 32256.  Defendant Lyndon Insurance directs, markets, and provides business activities throughout the State of Florida.

11. Defendant CarGuardian is a California corporation with its principal office located at 7071 Warner Ave #F-406, Huntington Beach, CA 92647.  Defendant CarGuardian directs, markets, and provides business activities throughout the State of Florida.

12. Defendant Omega Auto is a Missouri corporation with its principal office located at 50 N Laura St., Suite 2500, Jacksonville, FL 32202.  Defendant Omega Auto directs, markets, and provides business activities throughout the State of Florida.

## THE TCPA

13. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded message; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

14. The TCPA exists to prevent communications like the ones described within this Complaint.  See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

15. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

16. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

17. In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express <u>written</u> consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

18. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received

4

this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

19. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

20. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

21. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

22. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

23. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and*

5

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

24.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

## FACTS

### Defendants' Marketing Relationship

25.     Defendant Lyndon Insurance is a nationwide provider of automotive warranty underwriting services to various warranty administrators, including Defendants CarGuardian and Omega Auto.

26.     Defendants CarGuardian and Omega Auto are automotive warranty administrators that sell and service Defendant Lyndon Insurance's insurance products.

27.     Defendant Omega Auto's website plainly advertises its relationship with Defendant Lyndon Insurance: "Omega Auto Care is insured by Lyndon Southern Insurance Company, a Fortegra company."[4]

28.     Similarly, Defendant CarGuardian displays its affiliation with Defendants Lyndon Insurance and Omega Auto on its website including links to the "Omega-Powertrain Agreement" and the "Omega-Comprehensive" Agreement, both of which state that vehicle warranty insurance is being provided by "Lyndon Southern Insurance Company."[5]

---

[4] https://omegaautocare.com/about-us/; (last accessed on May 13, 2019).

[5]     http://www.carguardian.com/wp/wp-content/uploads/2015/09/Omega-Powertrain.pdf   and http://www.carguardian.com/wp/wp-content/uploads/2015/09/Omega-Comprehensive.pdf;   (last accessed on May 3, 2019).

29. In an effort to increase the sales of its insurance warranty products, Defendant Lyndon Insurance partnered with Defendants CarGuardian and Omega Auto pursuant to which Defendants CarGuardian and Omega Auto operated automated telemarketing campaigns to solicit consumers for Defendant Lyndon Insurance, as well as for themselves as Defendants CarGuardian and Omega Auto received commissions and/or fees from the sale and servicing of these policies.

30. Defendants CarGuardian and Omega Auto sent automated calls to Plaintiff and members of the putative class on behalf of and at the direction of Defendant Lyndon Insurance.

31. Defendant Lyndon Insurance benefited financially from Defendants CarGuardian and Omega Auto's telemarketing.

32. At all times relevant, Defendant Lyndon Insurance had the right to control Defendants CarGuardian and Omega Auto's telemarketing activities, which right it exercised.

33. At all times relevant, Defendant Lyndon Insurance authorized Defendants CarGuardian and Omega Auto to use its name in their marketing and contracts with consumers.

34. Defendant Lyndon Insurance was at all times relevant aware of Defendants CarGuardian and Omega Auto's marketing activities.

35. As such, Plaintiff is informed and believes that each of Defendants CarGuardian and Omega Auto's acts and/or omissions complained of herein were known, consented to, and/or ratified by Defendant Lyndon Insurance. Further, Defendant Lyndon Insurance knowingly received and retained monetary benefit of the transaction entered into as a result of both its business arrangement with Defendants CarGuardian and Omega Auto, and their unlawful calling and telemarketing practices alleged herein.

**Facts Specific to Plaintiff**

36.     On March 15, 2019 and March 21, 2019, Plaintiff received unsolicited calls on his cellular telephone number ending in 8791 (the "8791 Number").

37.     The calls originated from telephone number 949-288-0157 (the "0157 Number"), a number which, upon information and belief, is owned and/or operated by or on behalf of Defendant Omega Auto and/or CarGuardian.

38.     A simple Internet search identifies the 0157 Number as a number associated with a "Vehicle Warranty Scam."[6]

39.     Upon Plaintiff answering the phone, Plaintiff heard a pause and had to say "Hello" several times before he was greeted by a live person. This long pause is indicative of automated and predictive telephone dialing system technology, which operates by automatically dialing a number from a list of numbers, without any human intervention, and, once answered by a consumer, connects the call to the next available marketing agent.

40.     Frustrated by these harassing and unsolicited calls, Plaintiff decided to stay on the phone during the second call to speak with a live representative and determine who was calling him.

41.     Plaintiff was transferred to an individual by the name of "Jeff" or "Jim" who stated that he was with "Omega Auto Care."

42.     Defendant's agent then attempted to sell Plaintiff an extended warranty for his vehicle.

43.     After continuing the conversation, the agent stated that he was also with "CarGuardian" and was provided the following telephone number for the company: 1-800-279-1503 (the "1503 Number"), which Defendant CarGuardian identifies as its number on its website.[7]

---

[6] *See* https://www.nomorobo.com/lookup/949-288-0157; (last accessed on May 13, 2019).

[7] https://www.carguardian.com/terms.php; (last accessed on May 13, 2019).

44. Other recipients of Defendants' spam calls, aggravated by the nuisance, disruption, and invasion of their privacy, have voiced their complaints in various on-line forums about the 1503 Number. The following is a sample of the complaints posted by consumers:

- Vehicle extended warranty swindlers. Buyers beware Received a call from "Dealer Processing Center" (262) 662-6272 Got switched to Lisa at "Dealer Processing Center" Santa Ana California (800) 279-1503 Found out later it is a.k.a CarGuardian, (800) 279-1503, 4 Hutton Centre Dr #200, Santa Ana, CA 92707, http://www.carguardian.com

- Long pause after I answered then "This is Michael from the vehicle warranty department" (a recording) and I said something ugly and hung up.

- SCAM! Didn't pick up but it is some vehicle warranty SCAM.

- vehicle warranty scam

- Called 3 times in a row as I did not answer.[8]

- female caller advised National Vehicle Warranty. warranty on my vehicle was expiring. I asked which car, she advised my 2012 Lincoln. I advised I never had one and the line went dead. Scammers....beware[9]

45. Plaintiff is the subscriber and/or sole user of the 8791 Number.

46. Additionally, Plaintiff has been registered on the National Do Not Call Registry since April 14, 2011.

47. Plaintiff received the subject calls within this judicial district and, therefore, Defendants' violations of the TCPA occurred within this district.

48. Upon information and belief, Defendants caused similar calls to be placed to individuals residing within this judicial district.

49. At no point in time did Plaintiff provide Defendants with written express consent to be contacted.

---

[8] http://800notes.com/Phone.aspx/1-262-662-6272
[9] https://www.everycaller.com/phone-number/1-440-219-0298/

50. Defendants' unsolicited calls caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's calls also inconvenienced Plaintiff and caused disruption to his daily life. Plaintiff had to interrupt his activities to pick up the calls.

## CLASS ALLEGATIONS

### PROPOSED CLASS

51. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

52. Plaintiff brings this case on behalf of the below defined Class:

> **No Consent Class:** All persons within the United States who, within the four years prior to the filing of this Complaint, were called by Defendants or anyone on Defendants' behalf, to said person's cellular telephone number, using the same equipment used to call Plaintiff's cellular telephone.
>
> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action (1) were called by or on behalf of Defendants; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendants' products and/or services; and (5) for whom Defendants claim (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.

53. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

54. Upon information and belief, Defendants have placed calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express

consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

55. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

### COMMON QUESTIONS OF LAW AND FACT

56. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

>  (1) Whether Defendants made non-emergency calls to Plaintiff and Class members' cellular telephones using an automatic telephone dialing system;
>
>  (2) Whether Defendants can meet their burden of showing that they obtained prior express written consent to make such calls;
>
>  (3) Whether Defendants' conduct was knowing and willful;
>
>  (4) Whether Defendants is liable for damages, and the amount of such damages; and
>
>  (5) Whether Defendants should be enjoined from such conduct in the future.

57. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely call telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

58. Plaintiff's claims are typical of the claims of the Class members, as they are all based

on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

59. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

60. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

61. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the No Consent Class)

62. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

63. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or prerecorded or artificial voice… to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

64. Defendants – or third parties directed by Defendants – used an automatic telephone dialing system to make non-emergency marketing telephone calls to the cellular telephones of Plaintiff and other members of the Class.

65. These calls were made without regard to whether Defendants had first obtained express written consent from the called party to make such calls. In fact, Defendants did not have prior express written consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

66. Defendants violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

67. As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**COUNT II**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

68. Plaintiff repeats and realleges the paragraphs 1 through 61 of this Complaint and incorporates them by reference herein.

69. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

70. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

71. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

72. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

73. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

74. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf

of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

75. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Hale Camerman, on behalf of himself and the other members of the Class, prays for the following relief:

a. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendants' violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting Defendants from using an automatic telephone dialing system to call telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d. An award of actual, statutory damages, and/or trebled statutory damages; and

e. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendants take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the calls as alleged herein.

Date: May 14, 2019

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S Hiraldo*
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**EDWARDS POTTINGER LLC**
Seth M. Lehrman
Florida Bar No. 132896
seth@pathtojustice.com
425 North Andrews Avenue
Suite
Fort Lauderdale, FL 33301
Telephone: 954-524-2820

*Plaintiff's counsel*